1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11  JORDAN AMARANT,                           CASE NO. 1:13-cv-00245-LJO-SKO

12              Plaintiff,                    **ORDER GRANTING PLAINTIFF'S
                                              MOTION TO REMAND**
13      v.

14                                            (Doc. No. 8)
    HOME DEPOT U.S.A., INC., a corporation;
15  CARY TERUYA, an individual; and DOES
    1 through 100, inclusive,
16
                Defendants.
17
    _____/
18

19                      **I.   INTRODUCTION**

20          Plaintiff Jordan Amarant ("Plaintiff") filed suit against Defendants Home Depot U.S.A., Inc.

21  ("Home Depot") and Carry Teruya ("Teruya") (collectively "Defendants") in Stanislaus County

22  Superior Court on April 23, 2012, alleging claims pursuant to California's Fair Employment and

23  Housing Act ("FEHA").  Plaintiff was deposed in the case on January 28, 2013.  Home Depot asserts

24  that Plaintiff's deposition testimony establishes that the sole cause of action against Teruya for

25  disability harassment is not viable as a matter of law, Teruya is therefore a sham defendant whose

26  citizenship must be disregarded for purposes of jurisdiction, and diversity jurisdiction exists between

27  Plaintiff and Home Depot.  On that basis, Home Depot removed the case to this Court on February

28  15, 2013.  (Doc. 1.)

On March 15, 2013, Plaintiff filed a motion to remand, arguing that the harassment claim against Teruya is viable, Teruya is not a sham defendant, and thus no diversity of citizenship exists to support removal jurisdiction. (Docs. 10, 11.) Home Depot filed an opposition to Plaintiff's motion to remand on April 17, 2013 (Doc. 12), and Plaintiff filed a reply brief on April 24, 2013 (Doc. 13). The Court determined that the matter was suitable for a decision without oral argument and vacated the May 1, 2013, hearing. For the reasons set forth below, Plaintiff's motion to remand is GRANTED.

## II.  BACKGROUND

Plaintiff began working for Home Depot in its Riverbank store in December 2006, and at the time of the events giving rise to the complaint, was working as a salaried Operations Manager at Home Depot's Modesto store. (Cmplt., Doc. 1-1, ¶ 8.) On April 1, 2011, Plaintiff fractured his collarbone playing softball. (Cmplt., ¶ 9.) Plaintiff sought medical treatment and alleges that he immediately informed the Store Manager, Teruya, that he would not be able to attend a store-sponsored community event the next day and that he would not be able to come to work the following day. (Cmplt., ¶ 9.) Teruya expressed "displeasure and annoyance" when Plaintiff informed him of these developments. (Cmplt., ¶ 9.)

Subsequently, Plaintiff was examined by a medical specialist who placed him on medical leave for five weeks because the broken collarbone limited Plaintiff's ability to work. (Cmplt., ¶ 9.) Plaintiff immediately informed Teruya of this, and Teruya responded angrily, telling Plaintiff in a "demeaning manner that [Teruya's] young niece had broken her collarbone and she was at school the next day." (Cmplt., ¶ 10.) During the course of his medical leave, Plaintiff alleges that he had "several tense telephone conversations with Teruya that ended with Teruya abruptly hanging up." (Cmplt., ¶ 11.) Teruya also complained to other assistant managers about how displeased he was with Plaintiff for taking medical leave. (Cmplt., ¶ 11.)

After returning from medical leave, Plaintiff alleges that Teruya told him that he was very disappointed in Plaintiff for taking the medical leave, angrily mentioned that during his leave Plaintiff had missed the performance review of a subordinate supervisor, others had to cover for him in his absence, and again disparagingly compared Plaintiff to Teruya's niece. (Cmplt., ¶ 12.)

On June 13, 2011, Plaintiff took part in a conference call where it was discussed that a sharp increase in theft in that district had been observed. (Cmplt, ¶ 13.) The theft concern centered around the fact that customers were able to walk out of Home Depot stores with merchandise carrying only an unpaid quote, which resembles a receipt. (Cmplt., ¶ 13.) Following the conference call, Plaintiff received a telephone call from Terry Fierro ("Fierro"), the Operations Manager at Home Depot's other Modesto store location. (Cmplt, ¶ 14.) Fierro requested that Plaintiff send an associate from his store to carry out a loss prevention exercise, in which the associate would attempt to carry merchandise out of Fierro's store with an unpaid quote. Plaintiff agreed to participate in the exercise. (Cmplt., ¶ 14.)

On June 21, 2011, Plaintiff requested that Jose Ramirez ("Ramirez"), a head cashier at Plaintiff's store, help him conduct the loss prevention exercise. (Cmplt., ¶ 15.) Ramirez was instructed to go to the other Modesto store location with an unpaid quote of certain items, take those items from the shelves, and attempt to walk past four different registers without paying for the items. (Cmplt, ¶ 15.) If he was stopped by a cashier, Ramirez was to commend the cashier for his or her vigilance. (Cmplt, ¶ 15.) If Ramirez was not stopped, he was to take note of the register and the cashier's name. (Cmplt, ¶ 15.)

Ramirez proceeded with the exercise as instructed, and took selected items from the store shelves and walked past a cashier without paying. (Cmplt., ¶ 16.) However, before Ramirez was able to return inside the store to "test" other cashiers, he was stopped by loss prevention employees and forcibly handcuffed and detained inside the store. (Cmplt., ¶ 16.)

Teruya was informed of Ramirez' detention at the other Modesto location, contacted Plaintiff, and Plaintiff informed Teruya about the loss prevention exercise planned by Fierro. (Cmplt., ¶ 17.) On or about July 5, 2011, Teruya informed Plaintiff that his employment with Home Depot was terminated for putting an employee's safety in jeopardy. (Cmplt., ¶ 18.) Fierro was not disciplined. Plaintiff alleges that Home Depot and Teruya terminated Plaintiff due to Plaintiff's disability and protected medical leave. (Cmplt., ¶ 18.)

Plaintiff filed complaints against Home Depot and Teruya with the Department of Fair Employment and Housing on December 9, 2011, and was issued right-to-sue notices that same day.

1   (Cmplt., ¶ 20.)  On April 23, 2012, Plaintiff filed suit against Home Depot and Teruya in Stanislaus

2   County Superior Court asserting claims for disability discrimination, retaliation, and failure to

3   prevent discrimination, harassment, and retaliation against Home Depot and a claim for disability

4   harassment against Home Depot and Teruya.  (Doc. 1-1.)

5       On January 28, 2013, Plaintiff was deposed.  Following the deposition, Home Depot asserted

6   that it was undisputed that Plaintiff could not muster any evidence that would provide for a viable

7   harassment action against Teruya.  Although Home Depot maintains it was unable to ascertain from

8   the complaint whether there was any possibility that the state court would recognize a valid cause

9   of action for harassment against Teruya, the deposition made it apparent that there was no possibility

10  a harassment claim against Teruya.  According to Home Depot, Teruya is therefore a sham defendant

11  whose California citizenship is disregarded for purposes of removal, and there is federal diversity

12  jurisdiction over the suit.  As such, Home Depot removed the complaint to this Court, and Plaintiff

13  filed a motion to remand which is presently pending before the Court.

14              **III.   DISCUSSION**

15  **A.    Legal Standards Governing Removal Jurisdiction**

16      "A defendant may remove an action to federal court based on federal question jurisdiction

17  or diversity jurisdiction."  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing

18  28 U.S.C. § 1441).  It is presumed, however, "that a cause lies outside [the] limited jurisdiction [of

19  the federal courts] and the burden of establishing the contrary rests upon the party asserting

20  jurisdiction."  *Id.* (internal quotation marks omitted).

21      "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the

22  first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).  The defendant

23  always bears the burden of establishing that removal is proper, and the court "resolves all ambiguity

24  in favor of remand."  *Hunter*, 582 F.3d at 1042.

25      The propriety of removal requires the consideration of whether the district court has original

26  jurisdiction of the action  i.e., whether the case could have originally been filed in federal court based

27  on a federal question, diversity of citizenship, or another statutory grant of jurisdiction.  *See*

28  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  If the case is within the original jurisdiction

of the district court, removal is proper so long as the defendant complied with the procedural requirements set forth in 28 U.S.C. § 1446. If the case is not within the original jurisdiction of the district court, removal is improper. The absence of subject matter jurisdiction is not waivable by the parties. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951).

Federal district courts have original jurisdiction over cases where there is complete diversity of citizenship, i.e., between citizens of different states. *See* 28 U.S.C. § 1332(a). Further, a defendant may remove an action to federal court under Section 1332 provided no defendant is a citizen of the same state in which the action was brought. *See id.* § 1441(a), (b). An exception to the requirement for complete diversity exists, however, when a non-diverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). In that case, the district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent.

**B.    Contentions of the Parties**

Plaintiff asserts that there is no removal jurisdiction over this matter, and the case must be remanded. Specifically, Plaintiff argues that he testified extensively about the hostile work environment that was created by Teruya in comparing Plaintiff to Teruya's niece and interacting with Plaintiff in an angry tone over the telephone, and hanging up on Plaintiff at the end of phone conversations. Plaintiff also argues that Teruya admitted during his deposition that he suspected Plaintiff could have continued to work despite his collarbone injury, and that he was "displeased" that Plaintiff used the full amount of medical leave. Plaintiff also contends that his employment termination is further evidence of disability harassment. Finally, Plaintiff notes that comments made by Teruya about other Home Depot employees supports a finding of disability harassment.

Home Depot contends that Plaintiff's deposition testimony fails to establish a viable claim for harassment against Teruya as a matter of law. The incidents identified by Plaintiff in his deposition testimony have no connection to Plaintiff's purported disability and are too trivial to amount to a workplace permeated with discriminatory intimidation, ridicule, and insult. Moreover,

Home Depot's decision to terminate Plaintiff's employment does not provide a basis for a harassment claim against Plaintiff's supervisor, Teruya.

## C.    Teruya Was Not Fraudulently Joined

### 1.    Legal Standards

#### a.    Fraudulent Joinder

"Fraudulent joinder is a term of art" and does not require an ill motive. *McCabe*, 811 F.2d at 1339; *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983). Joinder will be deemed fraudulent where the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe*, 811 F.2d at 1339. The defendant alleging the fraudulent joinder carries the heavy burden of demonstrating the improper joinder by clear and convincing evidence. *Hamilton Materials, Inc. v. Dow Chem. Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *see also Hunter*, 582 F.3d at 1044.

In determining whether a cause of action is stated, typically courts "'look only to a plaintiff's pleadings to determine removability.'" *Richey,* 139 F.3d at 1318 (quoting *Gould Mut. Life Ins. Co. of N.Y.*, 790 F.2d 769, 773 (9th Cir. 1986)). Yet, where fraudulent joinder is an issue, the Ninth Circuit has directed that courts may go "somewhat further" by allowing a defendant to present facts showing that joinder is fraudulent. *Id.* "[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001); *see also West Am. Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n.6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and other evidence).

A court must evaluate the factual allegations and evidence in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *see also Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944) ("In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in the state

court."). Federal courts in this circuit apply the fraudulent-joinder rule in cases only where it is indisputably clear that the plaintiff states no cause of action against the non-diverse defendant. *See Dominick's Finer Foods v. Nat'l Constr. Servs., Inc.*, No. CV10-00836-SVW (PWJx), 2010 WL 891321, at *2 (C.D. Cal. Mar. 9, 2010) (citing *Morris*, 236 F.3d at 1067-68); *Kruso*, 872 F.2d at 1427; *McCabe*, 811 F.2d at 1339; *Maffei v. Allstate Cal. Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006); *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1136-37 (S.D. Cal. 1998); *Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 249 (E.D. Cal. 1992); *Zogbi v. Federated Dep't Store*, 767 F. Supp. 1037, 1041-42 (C.D. Cal. 1991)). In other words, a defendant must essentially show that the plaintiff cannot assert a claim against the non-diverse party as a matter of law. *See Ontiveros v. Michaels Stores, Inc.*, No. CV 12-09437 MMM (FMOx), 2013 WL 815975, at * 4 (C.D. Cal. Mar. 5, 2013).

When removability is uncertain, the period of timeliness for removal is measured from the point at which the defendant had notice that the case was removable. Pursuant to 28 U.S.C. § 1446(b)(3),

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Thus, as explained by the Ninth Circuit in *Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010), Section 1446(b) provides two 30-day periods for removing a case. Interrogatory responses and other discovery documents as well as deposition testimony can constitute an "other paper" under Section 1446(b), triggering the second 30-day period for removal. *Id.* at 886-87.

### b.    FEHA Harassment Claims

To establish a claim for harassment pursuant to FEHA, a plaintiff must demonstrate that (1) he is a member of a protected group; (2) he was subjected to harassment because he belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment. *See Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 129-31 (1999); *see also Lawler v. Montblanc North Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013).

7

1    Harassment is defined in Section 7287.6 of the California Code of Regulations as including,

2  but not limited to, verbal harassment (e.g., epithets or slurs), physical harassment (e.g., assault or any

3  physical interference with normal work or movement), visual harassment (e.g., derogatory posters

4  or drawings), and sexual favors. "Harassment cannot be occasional, isolated, sporadic, or trivial[;]

5  rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or generalized

6  nature." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 610 (1989).  "When the

7  workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently

8  severe or pervasive to alter the conditions of the victim's employment and create an abusive working

9  environment, the law is violated." *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 409 (1994)

10  (internal quotation marks and citations omitted).

11    Whether an environment is hostile or abusive can be determined "only by looking at all the

12  circumstances . . . [including] the frequency of the discriminatory conduct; its severity; whether it

13  is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

14  interferes with an employee's work performance." *Etter v. Veriflo Corp.*, 67 Cal. App. 4th 457, 463-

15  64 (1998) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22-23 (1993)).

16    The California Supreme Court has differentiated discriminatory conduct from harassing

17  conduct under FEHA for purposes of a supervisor's personal liability.  Discriminatory conduct arises

18  out of actions that are inherently necessary to perform a supervisor's job.  Harassment arises out of

19  conduct that is outside the scope of necessary job performance and "presumably engaged in for

20  personal gratification, because of meanness or bigotry, or for other personal motives." *Jones   v.*

21  *Lodge at Torrey Pines P'ship* (*"Jones"*), 42 Cal. 4th 1158, 1164 (2008) (quoting *Janken v. GM*

22  *Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996)).

23    **2.    It is Not Obvious and Undisputable that Plaintiff's Harassment Claim Against
          Teruya Cannot Possibly be Established**

24

25    Home Depot asserts that Plaintiff's deposition testimony is clear and convincing evidence that

26  a harassment claim against Teruya is not viable as a matter of law.  Home Depot contends that the

27  deposition testimony reveals that Teruya's conduct was not sufficiently severe or pervasive to

28  constitute harassment, the alleged conduct has no connection to Plaintiff's disability, and Teruya's

8

termination of Plaintiff's employment is not evidence of harassment.  To support these contentions, Home Depot cites several cases where summary judgment was decided against the plaintiffs who had asserted claims for harassment against supervisors.  According to Home Depot, case law establishes that Plaintiff's harassment claim against Teruya is not viable as a matter of law.

### a.    Deposition Testimony Does Not Eliminate Any Possibility that Plaintiff Can Establish a Harassment Claim Against Teruya

Merely showing that an action is likely to be dismissed against that defendant does not demonstrate fraudulent joinder.  Rather, it must appear to "a near certainty" that joinder was fraudulent. *Lewis*, 83 F.R.D. at 466.  As a result, the removing defendant must establish that there is absolutely no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995); *Bertrand v. Aventis Pasteur Lab's, Inc.*, 226 F. Supp. 2d 1206, 1212 (D. Ariz. 2002); *Davis v. Prentiss Props. Ltd, Inc.*, 66 F. Supp. 2d 1112, 1113 (C.D. Cal. 1999) ("The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.").

Thus, that a claim against the in-state defendant is insufficiently pled does not prove clearly and convincingly that there is absolutely no possibility that the plaintiff will be able to establish a cause of action.  For example, in *Burris v. AT&T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040 (N.D. Cal. July 19, 2006), the plaintiff sued his former employer, Cingular, and his former supervisor, Caniglia.  As to Caniglia, the plaintiff alleged a claim for intentional infliction of emotional distress ("IIED"). *Id.*  Cingular removed the suit asserting that the IIED claim against Caniglia failed to allege any extreme or outrageous conduct, thus rendering it insufficiently pled. *Id.* at *2.  As such, Cingular contended that Caniglia was fraudulently joined and his California citizenship should be disregarded for purposes of diversity jurisdiction. *Id.*  The court rejected this argument noting that Cingular had failed to establish that the plaintiff would not be afforded the

1  opportunity to amend his complaint to cure this purported deficiency. *Id.* As such, Cingular had

2  failed to demonstrate that the plaintiff could not prevail against Caniglia. *Id.*[1]

3      However, where the claim against the non-diverse defendant is not deficient on its face and

4  defendants had no other notice of fraudulent joinder of the non-diverse defendant, deposition

5  testimony may nonetheless provide notice that a non-diverse defendant is fraudulently joined,

6  thereby triggering the second 30-day removal window under Section 1446(b).   For example, in

7  *Rider v. Sears Roebuck*, No. CV 11-2700 GAF (FMOx), 2011 WL 2222171, at * 1 (C.D. Cal. June

8  7, 2011), the plaintiff, Shannon Rider ("Rider") filed suit against Sears, Roebuck and Co. ("Sears")

9  and Mario Carillo in state court.   The complaint alleged various state-law causes of action in

10  connection with "ongoing sexual harassment by supervisory employees Doris Webb ("Webb") and

11  defendant Carillo" that Rider suffered. *Id.* After filing the complaint, Rider realized that she had

12  mistakenly named Mario Carillo as a defendant, rather than Mario Gonzalez, whom she intended to

13  name. *Id.* This was first discovered in early January 2011 when the defendants served responses to

14  special interrogatories that named a Mario Gonzalez, and not Mario Carillo, as Rider's supervisor.

15  *Id.*

16      On January 26, 2011, at Rider's deposition, she testified that she did not have any concerns

17  or issues with respect to how Mario *Carillo* treated her, and that she had mistakenly named him as

18  a defendant because she did not know the last name of her supervisor, who was also named Mario.

19  *Id*. She further testified that she did not know of any reason why she should bring a claim against

20  Mario *Carillo*.   The parties agreed to a stipulation for dismissal, and the court approved the

21  stipulation on March 25, 2011. *Id.* On March 30, 2011, Sears removed the action to federal court

22  based on diversity jurisdiction. *Id.* Rider filed a motion to remand the action contending that the

23  removal was not timely pursuant to 28 U.S.C. § 1446(b).

24

25      [1] *See also Ontiveros*, 2013 WL 815975, at *6 ("Even if the complaint does not allege sufficient facts to plead
a viable harassment claim against Baghdadlian, Michaels has not shown that the Ontiveros could not amend to add
additional allegations of harassment."); *Hale v. Bank of Am., N.A.*, No. CV 12-10064 MMM (PJWx), 2013 WL 989968,
26  at *6 (C.D. Cal. Mar. 13, 2013) ("even if plaintiff has not alleged facts sufficient to state a harassment claim against
Cervantez, BofA has not established that she cannot amend the pleading to state a viable harassment claim"); *Padilla
27  v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) ("a defendant seeking removal based on an alleged
fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-
28  diverse defendant")

1    The court determined that Rider's admission in her deposition clearly established that there

2    was no claim against Mario Carillo and the testimony both qualified as an "other paper" under

3    Section 1446(b) and gave Sears notice that the case had become removable.  The court nonetheless

4    concluded that Sears failed to timely remove the action within 30 days from the date of the Rider's

5    deposition testimony; the court rejected Sears' argument that the case did not become removable until

6    the state court had actually dismissed Carillo.  *Id.*

7    This case more closely resembles the fraudulent joinder allegations in *Cingular* than in *Rider.*

8    Home Depot contends that Plaintiff's deposition testimony establishes that the harassment claim

9    against the non-diverse defendant Teruya is not viable as a matter of law.  Specifically, Home Depot

10   contends that Plaintiff's testimony, even if credited as true, does not establish conduct on the part of

11   Teruya that is sufficiently severe or pervasive to constitute harassment, and Teruya's conduct has no

12   connection to Plaintiff's purported disability.  Merely showing that the evidence supporting a claim

13   may be insufficient to survive summary judgment against a non-diverse defendant, however, is no

14   more adequate to prove fraudulent joinder than asserting a claim is insufficiently pled such that it

15   may not survive a motion to dismiss.

16   Further, Home Depot's assertion that the evidence is insufficient to support a harassment

17   claim against Teruya is essentially an argument that the claim *may not have merit.*  Such an argument

18   is not tantamount to proving that there is *absolutely no possibility* that Plaintiff can establish a claim

19   against Teruya for harassment.  In this way, Home Depot's argument is very different from that

20   presented in *Rider.*  In *Rider*, the plaintiff conceded that the wrong defendant had been named and

21   the claim against the non-diverse defendant was not viable under any circumstances.  As such,

22   discrete and undisputed facts clearly established that there was no factual basis for the claim against

23   the wrongly named defendant.  In contrast, Home Depot asserts here that the Court should essentially

24   perform a summary judgment analysis by considering all the evidence in the record as to Plaintiff's

25   harassment claim against Teruya and conclude that the evidence is not sufficient to support a

26   harassment claim as a matter of law.

27   There is very little case authority relevant to the particular removal posture in this case.  In

28   two district court cases where a similar fraudulent joinder argument was made by defendants upon

removal, both courts concluded removal was improper.   In *Capretto v. Stryker Corporation*, No. C 07-03390 WHA, 2007 WL 2462138 (N.D. Cal. Aug. 29, 2007), the plaintiff filed a complaint against his former employer, the Stryker Corporation, and his former supervisor, Michael Irigaray ("Irigaray"), in state court.  Following discovery, including depositions of the plaintiff in August 2006 and Irigaray in November 2006, the defendants filed a motion for summary judgment on December 20, 2006.  *Id.* at *1.  The state court granted summary judgment with respect to the plaintiff's disability-harassment claim against Irigaray.  *Id.*  Stryker Corporation removed the case to federal court, asserting that the case first became removable when the state court dismissed Irigaray after ruling on the motion for summary judgment.  *Id.* at *2.  Plaintiff filed a motion to remand, which the court granted.

In granting Plaintiff's motion to remand, the court "assumed for the sake of argument that Irigaray was a sham defendant" and that Plaintiff's deposition testimony conclusively showed that no claim for harassment was viable.  *Id.* at *2.  The Court reasoned that, assuming deposition testimony showed that Irigaray was a sham defendant, the case became removable long before the superior court ruled on the defendant's motion for summary judgment.  *Id.*  Specifically, the court found that the case would have became removable at the latest on December 20, 2006, when the defendants filed their motion for summary judgment; thus the removal in June 2007 was well beyond the 30-day limit.  *Id.*  Additionally, notwithstanding the untimeliness of the removal, by filing the motion for summary judgment, the defendants manifested their intent to have the matter adjudicated in state court, and thus abandoned their right to remove to a federal forum.  *Id.* at *3.

The *Caparetto* court did not consider whether the deposition testimony established clearly and convincingly that Irigaray was a sham defendant; rather, it assumed so for the sake of argument and concluded the case was not removable in any event.  *Caparetto*, therefore, offers no support for the proposition that the type of deposition testimony Home Depot points to in this case clearly and convincingly establishes that there is no possibility that Plaintiff can establish a viable harassment claim against Teruya.

Further, in *Cava v. NetVersant-Nat'l, Inc.*, No. C 07-3224 SBA, 2007 WL 4326754 (N.D. Cal. Dec. 7, 2007), the court remanded a removed action finding that the harassment claim against

the purportedly fraudulent defendant was  colorable, despite that summary judgment had been granted with respect to the harassment claim prior to removal.  There, the plaintiff, Michael Cava ("Cava"), filed a complaint against NetVersant-National, Inc. ("NetVersant") and Peter Wainwright ("Wainwright").  *Id.* at *1.  Cava and Wainwright were both California Citizens while NetVersant was a Delaware corporation.  *Id.*  Cava's complaint alleged a cause of action for harassment and negligent and intentional infliction of emotional distress against Wainwright.  *Id.*  Wainwright and NetVersant answered the complaint, and the parties engaged in discovery.  *Id.*  Home Depot served Cava with written discovery requests, to which Cava responded on November 27, 2006.  *Id.*  On November 28, 2006, Cava completed the first day of Wainwright's deposition.  *Id.*  At the end of the day of deposition, the defendants' counsel noted that, based on Cava's written discovery responses and Wainwright's deposition testimony, there were insufficient facts to support Cava's claims against Wainwright.  *Id.* On April 7, 2007, the defendants filed motions for summary judgment.  *Id.*  On June 4, 2007, the state court granted the motions with respect to the claims against Wainwright finding that Cava had failed to show that he was subjected to conduct that was sufficiently severe or pervasive to support a claim for harassment.  *Id.*  Moreover, the court held that the conduct was not outrageous or extreme enough to support a claim for emotional distress.  *Id.*  On June 19, 2007, NetVersant removed the case to federal court asserting that as of June 4, 2007, the action was only between citizens of different states, i.e., NetVersant and Cava because Wainwright had been dismissed.  *Id.* at *2.

In opposing Cava's motion to remand, NetVersant conceded that until the state court's order, there remained a possibility, although very remote given the facts and applicable law, that Cava could establish a claim against Wainwright.  *Id.* at *2.  NetVersant also acknowledged that removal on the basis of fraudulent joinder prior to the summary judgment order would have been unsuccessful in that Cava would likely have prevailed on a motion to dismiss for failure to state a claim.  *Id.*  NetVersant nonetheless argued that removal on the basis of fraudulent joinder was proper even where the plaintiff states a colorable claim against a non-diverse defendant from the time that the complaint is filed, though discovery and summary judgment, up to the instant the claim was denied on the merits.  *Id.*  The court rejected this argument and reasoned that a finding by the state

court that Cava failed to make the requisite showing in opposition to a summary judgment motion was not tantamount to a finding that there was no possibility that the plaintiff could have established a claim. *Id.* at *5. "Nor [was the state court's summary judgment motion decision] a ruling that Cava failed to state a claim and the failure was obvious." The court concluded that the "state court's order [did] not indicate that joinder was fraudulent and, for that reason, it cannot [] operate to make the case removable." *Id.*

Pursuant to the reasoning in *Cava*, even successfully dismissing a claim against a purported fraudulent defendant on summary judgment does not necessarily equate to a finding that there is no possibility that the plaintiff *could have* established a claim. Here, there is no state court decision assessing the sufficiency of the evidence, and, even more so than in *Cava,* there remains both a *possibility* that Plaintiff's harassment claim as to Teruya is sufficient to survive summary judgment, *and* that *further evidence* could strengthen Plaintiff's claim on the merits.[2] Resolving all disputed factual issues in Plaintiff's favor, Plaintiff's deposition testimony indicates that he had angry interactions with Teruya over the phone when he told Teruya he would be unable to work due to his injuries, and Teruya disparagingly compared Plaintiff to Teruya's young niece. (Doc. 12-1, Amarant Depo., 125:6-126:22.) Plaintiff testified that he had a second conversation with Teruya regarding additional weeks of leave from work, Teruya reacted angrily, and he abruptly ended the conversation by hanging up on Plaintiff. (Doc. 12-1, Amarant Depo., 136:10-22.) After returning to work, Teruya never made any angry or discriminatory comments to him, but Plaintiff heard that Teruya complained to other employees that he was not happy that Plaintiff had been out of work so long, that it was unnecessary, and that there were other assistant managers who had been injured worse than Plaintiff and returned to work a lot sooner than their doctors recommended. (Doc. 12-1, Amarant Depo., 141:14-142:9.) Plaintiff also testified that Teruya treated him differently when he

---

[2] To be clear, the Court is not reasoning that a plaintiff could resist removal where absolutely no factual allegations were stated to support a claim against a purported sham defendant by asserting that a factual basis for a claim may become apparent after discovery, or that future conduct may occur that would provide a factual basis for a cause of action. *See TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1102 (C.D. Cal. 2002) (whether plaintiff could recover on stated claims against resident defendants did not include consideration of whether, with further discovery, the plaintiff could uncover a factual basis for its claims; claims against resident defendants had no factual basis and plaintiff conceded that its basis for joinder was on speculation about future conduct).

returned to work and gave him the "cold shoulder." (Doc. 12-1, Amarant Depo., 143:2-8.) Plaintiff felt their relationship was "not the same as it had been previously to [his] injury." (Doc. 12-1, Amarant Depo., 143:2-8.)

Further, Plaintiff testified that Teruya made disparaging statements about other employees regarding their disability. (Doc. 12-1, Amarant Depo., 70:4-9.) Plaintiff testified that he had heard Teruya make specific negative comments about workers who were injured in the sense that these workers could not do what he wanted them to do and they were "another problem" that he had "to deal with." (Doc. 12-1, Amarant Depo., 69:16-70:3.) Plaintiff heard Teruya make derogatory comments about disabled people and the specific person who "[came] to mind" was Al Galicia. (Doc. 12-1, Amarant Depo., 70:4-18.) Plaintiff testified that Teruya made a comment that Galicia was only good for the door greeter position. (Doc. 12-1, Amarant Depo., 70:19-21.)[3]

Home Depot argues that this deposition testimony does not set forth conduct that is sufficiently severe or pervasive to constitute harassment as a matter of law. Home Depot's assertion, however, relates to the *likelihood* Plaintiff will be able to establish a harassment claim that will survive a motion for summary judgment, not that the harassment claim was insufficiently pled and could not be amended to state a claim, nor does it show that the claim is *obviously* foreclosed based on discrete and undisputed facts in Plaintiff's deposition testimony. While the Court might predict how a state court would assess the evidence in deciding a motion for summary judgment, this is not the Court's role in performing the fraudulent joinder analysis nor is it certain that a state court would reach the predicted conclusion, particularly since additional evidence may be presented at the time of summary judgment. In other words, the question is not whether success on Plaintiff's claim is probable or even likely, but whether the deposition testimony clearly and undisputably forecloses *any and all possibility* that a harassment claim against Teruya is viable as a matter of law. *See Cavallini*, 44 F.3d at 259. Plaintiff's deposition testimony is not clear and convincing evidence that there is *absolutely no possibility* that a state court could find that Plaintiff has established a viable

---

[3] The parties dispute whether Teruya's termination of Plaintiff's employment may be considered evidence of harassment. Home Depot maintains that the decision to terminate Plaintiff's employment was a personnel decision that cannot constitute harassment under the circumstances. Even if Home Depot is correct, it is still not undisputably clear that there is absolutely no possibility of a viable harassment claim against Teruya.

1    harassment claim under the totality of the circumstances.  The most Home Depot has demonstrated

2    is that the harassment claim may not survive summary judgment based on the evidence currently

3    presented.  *See Diaz*, 185 F.R.D. at 586 (merely showing that an action is likely to be dismissed as

4    to a purported "sham" defendant does not demonstrate fraudulent joinder).

5          **b.    Assessing Sufficiency of the Evidence Goes Beyond Permitted**
           **Fraudulent Joinder Analysis**
6

7          Assessing the sufficiency of the evidence supporting Plaintiff's harassment claim *prior* to the

8    close of discovery in a summary-judgment-like fashion goes beyond the summary inquiry courts are

9    to perform in assessing fraudulent joinder.  *Hunter*, 582 F.3d at 1044 (quoting *Smallwood v. Illinois*

10   *Cent. R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004) for the proposition that in assessing fraudulent

11   joinder, only "a summary inquiry is appropriate" to identify "the presence of discrete and undisputed

12   facts that would preclude plaintiff's recovery").  Rather, such an analysis of the evidence is similar

13   to the preemption defense considered by the Ninth Circuit in *Hunter*.  In that case, the defendants

14   asserted that products liability claims against one of the non-diverse defendants were impliedly

15   preempted by federal law and not viable; as a result, the defendants argued that the non-diverse

16   defendant was fraudulently joined and removal jurisdiction was supported on the basis of diversity.

17   582 F.3d at 1043.  The court rejected this argument, reasoning that the preemption defense went the

18   merits of the plaintiff's case:  "When a defendant asserts that the plaintiff's claim is impliedly

19   preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the

20   resident defendant is 'obvious according to the settled rules of the state.'"  *Id.* (quoting *Hamilton*

21   *Materials*, *Inc.*, 494 F.3d at 1206).   In contrast to the summary inquiry appropriate for fraudulent

22   joinder, the "preemption question requires an inquiry into the merits of the plaintiff's claims against

23   all defendants and an analysis of federal law."  *Id.*

24         Similarly, here, any failure of Plaintiff's harassment claim is not obvious on the face of the

25   complaint, and requires both an inquiry into the evidence supporting the harassment claim against

26   Teruya and Home Depot, *and* an assessment of the *sufficiency* of the evidence to withstand a motion

27   for summary judgment.  This goes beyond the fraudulent joinder analysis which is limited to a

28

                                             16

1   "summary inquiry" for the purpose of identifying the presence of discrete and undisputed facts that

2   would preclude recovery. *See id.* at 1044 (citing *Smallwood*, 385 F.3d at 573-74).

3           **c.**      **Assessing Sufficiency of the Evidence Impermissibly Implicates the Merits of the Harassment Claim**

4

5         Finally, as discussed above, concluding that the harassment claim against Teruya is not viable

6   based on the sufficiency of the evidence treads into the merits of Plaintiff's harassment claim.

7   Fraudulent joinder motions are not to be used as a replacement for a summary judgment motion just

8   as they are not to be used as a replacement for the state court demurrer. *See Hernandez v. First*

9   *Student, Inc.*, 2010 WL 5313293, at *3 (C.D. Cal. Dec. 16, 2010) (concluding that whether

10  allegations are too vague to survive the pleading stage is properly addressed in a motion to dismiss,

11  not in an application to remand, and noting that "[p]arties should not be able to expand federal

12  jurisdiction beyond its statutory boundaries by using fraudulent-joinder-based removal as a

13  replacement for the state court demurrer." ).[4]

14        Moreover, where there are multiple defendants and the plaintiff's complaint states factually

15  similar allegations against all of them, a finding of fraudulent joinder is necessarily intertwined with

16  the substantive merits of the various causes of action. "In such circumstances, the allegation of

17  improper joinder is actually an attack on the merits of plaintiff's case as such." *Smallwood*, 385 F.3d

18  at 574. In *Smallwood*, the court reasoned that

19        when, on a motion to remand, a showing that compels a holding that there is no
20  reasonable basis for predicating that state law would allow the plaintiff to recover
    against the in-state defendant necessarily compels the same result for the nonresident
21  defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In
    such cases, it makes little sense to single out the in-state defendants as "sham"
22  defendants and call their joinder improper. In such circumstances, the allegations of
    improper joinder is actually an attack on the merits of plaintiff's case as such – an
23  allegation that, as phrased by the Supreme Court in *Chesapeake & O.R. Co. v.*
    *Cockrell*, [232 U.S. 146, 153 (1914)], "the plaintiff's case [is] ill founded as to all the
24  defendants."

---

25      [4] *See also Perez v. AT&T Co.*, 139 F.3d 1368, 1380-81 (11th Cir. 1998) (in fraudulent joinder inquiry, federal
26  courts do not weigh merits of plaintiff's claim beyond determining whether the claim is arguable under state law); *Mayes v. Rapport*, 198 F.3d 457, 463-64 (4th Cir. 1999) ("glimmer of hope" that plaintiff can establish a claim is sufficient to
27  preclude application of the fraudulent joinder doctrine); *Richey*, 139 F.3d at 1318 ("merely defective statement of the plaintiff's action does not warrant removal . . . It is only where the plaintiff has not, in fact, a cause of action against the
28  resident defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, that the joinder can said to be fraudulent").

1
2

*Id.*; *see also Hunter*, 582 F.3d at 1044-45 (quoting *Smallwood* and approving the Fifth Circuit's reasoning).

3
4
5
6
7
8
9
10
11
12
13

Notably, determining that the claim against Teruya is not viable as a matter of law necessarily undercuts the harassment claim against Home Depot, implicating the merits of the cause of action and not simply Teruya's joinder. Specifically, Plaintiff's claim for harassment against Home Depot is predicated on the same facts that are alleged against Teruya.[5] Because the basis for the harassment claim against Home Depot is predicated entirely on the alleged conduct of Teruya, a determination that Teruya is fraudulently joined has the effect of terminating the harassment claim against Home Depot and in that way is intertwined with a decision on the merits of the claim. For purposes of determining whether the Court may exercise its diversity jurisdiction, such a merits-based decision is improper. *See Smallwood*, 385 F.3d at 575 (citing *Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146, 153 (1914)).

14
15
16
17
18
19
20

In sum, Home Depot has not established clearly and convincingly that *all possibility* of a viable claim for harassment against Teruya has been obviously and definitively foreclosed. It is not beyond dispute that Plaintiff's harassment claim is not viable as a matter of law. Moreover, even to the extent that Plaintiff's deposition testimony does not provide evidence of harassment sufficient to survive summary judgment, it is not foregone that further evidence with regard to Plaintiff's work situation could not *possibly* be gathered. *See generally Fisher*, 214 Cal. App. 3d at 609-10 (whether harassment is sufficiently pervasive to create a hostile or offensive work environment must be determined from totality of the evidence).

21
22
23
24
25
26

Removal jurisdiction is to be strictly construed and any doubt as to jurisdiction must be resolved in favor of remand. *Gaus*, 980 F.2d at 566. The burden of proving fraudulent joinder is heavy and must be shown by clear and convincing evidence that there is *absolutely no possibility* that Plaintiff can establish a cause of action against Teruya for harassment. The Court finds Home Depot has not satisfied this burden. Although the harassment claim against Teruya *may* be resolved on

27
28

___

[5] Pursuant to California law, Home Depot is strictly liable for harassing conduct engaged in by one of its supervisors to the extent the supervisor was acting in the capacity of a supervisor when the harassment occurred. *State Dep't of Health & Human Servs. v. Super. Ct.*, 31 Cal. 4th 1026, 1042 (2003).

summary judgment in Teruya and Home Depot's favor if no further facts or evidence is developed, Home Depot has not clearly and convincingly shown that Plaintiff has absolutely no possibility of establishing a harassment claim.  Finally, assessing the sufficiency of the evidence treads into the merits of Plaintiff's harassment claim against not only Teruya, but also Home Depot, and effectively deprives Plaintiff of the ability to finish discovery and defend a motion for summary judgment on a complete record.

### 3. Conclusion

As the Court finds that Home Depot has not established that Teruya was fraudulently joined, complete diversity of citizenship between Plaintiff and the Defendants is lacking.  Thus, there is no basis for removal jurisdiction, and the case must be remanded to the Stanislaus County Superior Court.

### D. Request for Attorney's Fees and Costs

Where a case is remanded following a failed attempt at removal, the district court may impose attorneys' fees and costs incurred by the party who successfully opposed removal.  Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Thus, Congress has authorized the court to award attorney's fees upon remand.  The statute does not require the court to make a finding of bad faith prior to awarding fees.  Although a district court has wide discretion in assessing fees pursuant to Section 1447(c), *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1215 (9th Cir. 2000), absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal, *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006).  Plaintiff asserts that Home Depot did not have an objectively reasonable basis for removal, and requests $2,200 in fees and costs be awarded to him.  In this case, the Court finds that, while unsuccessful, the basis for removal was not unreasonable such that it warrants the imposition of fees.  Deposition testimony has been held to trigger the second 30-day removal period under Section 1446(b)(3), and Home Depot presented a reasonable, albeit unpersuasive, argument that Teruya was fraudulently joined based on Plaintiff's deposition testimony.

## V.  CONCLUSION AND ORDER

Based on consideration of the declarations, pleadings, and exhibits to the present motion, IT IS HEREBY ORDERED that:

1.      Plaintiff's Motion for Remand is GRANTED;

2.      Plaintiff's Request for Attorney's Fees is DENIED;

3.      The Clerk of Court is DIRECTED to serve this order on the Stanislaus County Superior Court; and

4.      This case shall be administratively closed.

IT IS SO ORDERED.

**Dated:     June 17, 2013**                          _____/s/ Sheila K. Oberto_____
                                                UNITED STATES MAGISTRATE JUDGE